ANTOON, Judge.
The state appeals the trial court’s order suppressing contraband evidence. We affirm the order because the record evidence supports the trial court’s conclusion that the contraband was seized incident to an illegal traffic stop.
In the early morning hours of August 24, 1995, the defendant, Rogelio Lazaro Garcia, was driving a 1993 Nissan north on the Florida Turnpike. At approximately 4:00 a.m., a highway patrolman stopped the Nissan for a traffic infraction. Through a series of questions directed to the defendant and the defendant’s passenger, as well as a computer check on the defendant, the patrolman determined that the defendant was driving with a suspended license. The passenger, who owned the Nissan, gave the patrolman permission to search the car. The search revealed controlled substances in the defendant’s luggage. Later, at the police station, cocaine was found in the defendant’s pants pocket.
The defendant was subsequently charged with trafficking in cocaine and possession of the controlled substance flunitrazepam. Pri- or to trial, the defendant moved to suppress the contraband evidence, arguing that it was obtained as a result of an unlawful traffic stop. At the hearing on the motion to suppress, the patrolman testified that he stopped the defendant because he could not read the expiration date on the temporary tag displayed “high up” in the rear window of the Nissan.[1] The patrolman explained that the stop occurred on a dark and rainy night.
The evidence presented at the hearing on the motion to suppress consisted of the testimony of the officer and a photograph of the rear window of the Nissan showing the temporary tag. After considering the evidence, the trial court determined “that the defendant did not commit a traffic violation, nor was there probable cause for the traffic stop.” Accordingly, the trial court granted the defendant’s motion to suppress.
The state appeals this ruling, arguing that the evidence does not support the trial court’s findings of fact, and the trial court applied the wrong legal standard. Specifically, the state contends that the trial court was required to accept the patrolman’s testimony that he could not read the expiration date on the license plate because there was no substantial competent evidence controverting his version of the events.[2] However, this argument simply ignores the fact that the trial court necessarily found the patrolman’s testimony to be not credible. Instead, the trial court relied upon the photograph of the Nissan to support its findings of fact. In this regard, the photograph reveals that the temporary tag was mostly in the lower one-half of the rear window on the driver’s side, and the numbers indicating the expiration date *1354 were large, clear, and in sharp contrast to the background of the tag. These numbers were written at the top of the tag and covered approximately one-half the width of the tag, making them significantly larger than the expiration date on stickers issued for placement on license plates. As a result of the placement of the tag, the expiration date appeared at the approximate midpoint between the top and the bottom of the rear window. Based upon this evidence, the trial court found that there was no probable cause of a traffic violation.[3]
In closing, we note that, contrary to the state’s urging, it is essential that there be an objective standard in which to justify the stop of a motorist because, absent an objective standard, there would be no protection against unreasonable seizures. See Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). A seizure of one’s person by the police implicates the Fourth and Fourteenth Amendments because the Fourth Amendment protects against unreasonable seizures. The reasonableness standard requires, at a minimum, that the facts upon which a seizure is based be capable of measurement against an objective standard. Delaware v. Prouse, 440 U.S. at 654, 99 S.Ct. at 1396. Without the reasonableness standard, officers would be authorized to stop vehicles at their unrestrained discretion.[4]
Accordingly, since the instant record supports the trial court’s conclusion that the defendant had been subjected to an illegal stop, we affirm the suppression order.
AFFIRM.
PETERSON, J., concurs.
HARRIS, J., dissents, with opinion.

. Section 316.605, Florida Statutes (1995), provides in pertinent part that license plates be displayed in such a manner that “all letters, numerals, printing, writing, and other identification marks upon the plates clear and distinct and free from defacement, mutilation, grease, and other obscuring matter so that they will he plainly visible and legible at all times from 100 feet from the rear or front.”

. See State v. Fernandez, 526 So.2d 192 (Fla. 3d DCA), cause dismissed, 531 So.2d 1352 (Fla.1988) (a court must accept evidence which is neither impeached, discredited, controverted, contradictory within itself, or physically impossible).

. Notably, State v. Bass, 609 So.2d 151 (Fla. 5th DCA 1992), the case cited by the dissent, is clearly distinguishable because, in Bass, the trial court made a specific finding that it believed the officer’s testimony that he could not read the tag on the car driven by the defendant.

. In our view, section 316.605 does not set forth a reasonable standard to justify a traffic stop because a particular officer’s inability to read a license tag or plate at a distance of 100 feet is hardly an objective standard. This is so because, for example, in bad weather all motorists would be subject to a stop regardless of whether they have properly displayed their license plates and expiration stickers issued by the state since the weather could impede the visibility of the license plate. Similarly, the myopic officer theoretically has more latitude in stopping vehicles than the officer with better vision. Perhaps a more reasonable approach would be for the statute to require that letters and numbers on tags, plates, and expiration stickers be a particular size, and that motorists display them in a particular designated manner and ensure that they are not obstructed or obliterated. However, such a change in the statute must, of course, be addressed by the legislature.