KELLY, Judge.
Kenneth Loray Ellis appeals his judgment and sentence for trafficking in cocaine and driving with a suspended license. We find no merit in the issues he has raised in this appeal and write to address only his argument that the trial court erred in denying his motion to suppress.
Officer Amanda Wilson was on routine patrol in Tampa when she noticed a car driven by Ellis moving along Comanche Avenue in a normal manner. As Officer Wilson does “all day long, every day of the week,” she “ran the tag” by entering the tag number into her patrol car’s computer system to request a report on the status of the tag. The response from this database query was “no record found.” Officer Wilson activated her lights and siren and followed Ellis to a residence about a block and a half away, where Ellis pulled into the driveway. Ellis could not produce a valid driver’s license or the registration information and was arrested for driving without a license. An ensuing search of the car incident to arrest yielded a black bag containing cocaine.
Ellis filed a motion to suppress, seeking to have the stop declared invalid and the fruits thereof suppressed. During the suppression hearing, Officer Wilson testified that the “no record found” response indicated to her that the car was not currently registered in the State of Florida and therefore was being operated in violation of section 320.02(1), Florida Statutes (1997).[1] On cross-examination, she acknowledged that “it could mean other things, but it could mean other things that there’s something wrong with the tag in that particular vehicle.” In response to a question from the trial court asking whether the “other things” were “all illegal things” or “are there any legal things that it could be,” she stated that she “could not think of a legal thing.” She also acknowledged that there had been occasions when she had stopped cars on the basis of a “no record found” response and found that the ear was properly registered. She testified that “that’s why you conduct the stop to see the paper registration, to verify the paper.” The trial court denied Ellis’s motion to suppress, finding that the officer had a reasonable belief that Ellis’s car was not properly registered and therefore, she was entitled to conduct a stop to investigate the status of the registration.
Stopping an automobile and detaining its occupants constitute a “seizure” within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). The essential purpose of the proscription in the Fourth Amendment is to impose a standard of “reasonableness” upon the exercise of discretion by a government official in order to safeguard the privacy and security of individuals against arbitrary in *32 vasions. Id. at 653-54, 99 S.Ct. 1391. “[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual’s Fourth Amendment interests against its promotion of legitimate governmental interests.” Id. at 654, 99 S.Ct. 1391. The reasonableness standard usually requires that the facts ;upon which an intrusion is based be capable of measurement against an objective standard such as probable cause or a less stringent test such as reasonable suspicion. Id. Accordingly, the Supreme Court has held that it is a violation of the Fourth Amendment to stop an automobile and detain a driver to check his license and registration unless “there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of the law.” Id. at 663, 99 S.Ct. 1391.
Thus, the issue we must decide is whether the officer who stopped Ellis had at least a reasonable, articulable suspicion that the car Ellis was driving was not properly registered. To justify an investigatory stop, an officer must be able to “point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant” the stop. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In assessing the reasonableness of the stop, we must look at the facts available to the officer at the moment of the stop and determine whether they “ ‘warrant a man of reasonable caution in the belief that the action taken was appropriate.” Id. at 21-22, 88 S.Ct. 1868 (quoting Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). Further, in determining whether an officer acted reasonably, “due weight must be given ... to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.” Id. at 27, 88 S.Ct. 1868.
Here, Officer Wilson had information that the Department of Motor Vehicles had no registration record for the tag affixed to Ellis’s car. She testified that to her that indicated that the car was not currently registered or that there was “something wrong” with the tag. We conclude that given her experience and the facts known to her at the time, it was reasonable for Officer Wilson to infer that the car was not properly registered. Accordingly, she was justified in stopping the car to investigate further.
In an analogous factual situation we have recognized that it is proper for an officer to stop a car to determine whether it has a current registration. In Palmer v. State, 753 So.2d 679 (Fla. 2d DCA 2000), Palmer had a temporary tag properly displayed in the rear license plate bracket of his car; however, because lighting in the area was poor, a deputy who saw Palmer sitting in his car could not read the expiration date on the tag. When Palmer drove away, the deputy followed him onto a lighted street hoping to read the expiration date. Id. at 679. When he still could not read the date, he stopped Palmer due to the “possibly expired” tag. We concluded that the stop was justified, but only up to the point that the deputy could read the expiration date on the tag. Id. at 680; see also Borys v. State, 824 So.2d 204 (Fla. 2d DCA 2002) (upholding. a stop that was conducted because the officer was not able to read the expiration date on a temporary tag).[2]
*33 In Palmer and Borys, we found the stops justified even though the officers had no reason to suspect that the cars’ registrations were not current. In contrast, Officer Wilson actually had information indicating that the Department of Motor Vehicles had no record of the tag, which in light of her experience gave her a reason to suspect that the car was not properly registered or that there was “something wrong” with the tag. If the officers in Palmer and Borys were justified in stopping cars to investigate the status of their registrations simply because they could not determine that status from looking at the tag, then Officer Wilson was justified in stopping Ellis to investigate after having received information that indicated that the Department of Motor Vehicles had no record of the tag affixed to Ellis’s car.
Ellis argues that Officer Wilson did not have a reasonable suspicion because she admitted that there had been occasions when she had received the “no record found” response and then on further investigation determined the car was properly registered. “[E]ven in Terry the conduct justifying the stop was ambiguous and susceptible of an innocent explanation.” Illinois v. Wardlow, 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Terry does not require absolute certainty nor does it require an officer to ignore facts that indicate an individual may be committing a crime simply because those facts do not rise to the level of probable cause to make an arrest. Terry, 392 U.S. at 21-22, 26, 88 S.Ct. 1868. Where the facts known to an officer suggest, but do not “necessarily” indicate ongoing criminal activity, an officer is entitled to detain an individual to resolve the ambiguity. Wardlow, 528 U.S. at 125, 120 S.Ct. 673.
Accordingly, we conclude that the trial court correctly denied Ellis’s motion to suppress, and finding no merit in the other issues he has raised, we affirm his judgment and sentence.
Affirmed.
VILLANTI, J., Concurs.
NORTHCUTT, J., Concurs specially with opinion.

. Violation of section 320.02(1), which requires owners or persons in charge of a motor vehicle operated or driven on the roads of this state to register the vehicle in the state, is a second-degree misdemeanor pursuant to section 320.57(1), Florida Statutes (1997). When an owner registers a car, the Department of Motor Vehicles assigns a registration license number to the car and issues a registration certificate and a registration license plate to the owner that display the assigned number. § 320.06(l)(a), Fla. Stat. (1997).

. In Diaz v. State, 800 So.2d 326 (Fla. 2d DCA 2001), this court also found that a stop was justified based on the officer's inability to read the expiration date on a temporary tag. In State v. Diaz, 850 So.2d 435, 437 (Fla.2003), the supreme court affirmed our deci *33 sion but did not expressly decide whether a stop based on an officer's inability to read the expiration date of a temporary tag was justified, stating, "we assume for the purposes of this case that the initial stop by the deputy sheriff was legitimate, albeit based upon a barely justifiable purpose.”